UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO DUARTE and ALEJANDRO GUTIERREZ,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF STOCKTON, STOCKTON POLICE DEPARTRMENT, ERIC JONES, KEVIN JAYE HACHLER (1641); ERIC B. HOWARD (2448); MICHAEL GANDY (2858); CONNER NELSON (2613); SGT. UNDERWOOD, and DOES 1-50,<br><br>Defendants. | No. 2:19-cv-00007-MCE-CKD<br><br>**MEMORANDUM AND ORDER** |

Through the present lawsuit, Plaintiffs Francisco Duarte and Alejandro Gutierrez (collectively "Plaintiffs" unless otherwise specified) allege they were wrongfully arrested, and subject to excessive force in the process, by members of the Stockton Police Department. Plaintiffs' operative pleading the First Amended Complaint ("FAC") names both the City of Stockton and the Stockton Police Department as Defendants, along with Officers Eric Jones, Kevin Hachler, Eric Howard, Michael Gandy, Conner Nelson and

1

Sergeant Underwood.[1]   The FAC includes four separate claims for violations of 42 U.S.C. § 1983, as well as federal substantive due process claims on grounds that the police reports prepared as a result of the subject incident included false information in order to justify Defendants' arrest of Plaintiffs and to "cover up and excuse [their[ excessive force."  Pls.' First Amended Complaint ("FAC"), ECF No. 16, ¶ 62.

Presently before the Court is Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), on grounds the FAC fails to state a viable claim for two reasons.  First, Defendants argue that three of Plaintiffs' five Counts are barred by the Supreme Court's decision in <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).  Secondly, Defendants aver that the City of Stockton and the Stockton Police Department are improperly named as Defendants in Plaintiffs' First and Second Claims, which both allege excessive force in contravention of 42 U.S.C. § 1983.[2]

As set forth below, Defendants' Motion is GRANTED.[3]

**BACKGROUND**[4]

This case stems from an encounter between Plaintiffs and police officers on May 5, 2017, at the corner of South Hunter Street and Martin Luther King Boulevard in Stockton, California.  A large, and predominantly Mexican-American, crowd had gathered to celebrate the so-called "Cinco de Mayo" holiday.  Plaintiffs, who are both Mexican-American, were in attendance.

---

[1] This Memorandum and Order will also refer to said Defendants collectively unless otherwise noted.

[2] Defendants also included a third ground for their motion; namely that the allegations of Claims One through Four, to the extent they are predicated on alleged Fourteenth Amendment violations, are improper.  Defendants have conceded that issue and, consequently, it will not be further analyzed in this Memorandum and Order.

[3] Having determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs in accordance with E.D. Local Rule 230(g).

[4] Unless otherwise indicated, the facts set forth in this Section are taken, at times verbatim, from the allegations contained in Plaintiffs' FAC.  ECF No. 16.

According to the FAC, after Plaintiff Gutierrez had ordered food from a taco truck at the corner he went across the street to purchase a soda.  Gutierrez claims that as he traversed the cross walk, a police car pulled up rapidly and waved, which he interpreted as a directive to return to the taco truck.  At some point Plaintiff Duarte, who is also Mexican-American, arrived separately and had also ordered food from the same truck.

According to Plaintiffs, a number of Stockton Police officers subsequently arrived and "plann[ed] a violent attack against some Mexican-American members of the crowd" in order "to demonstrate the power and dominance of the Stockton Police against Mexcian Americans, to demonstrate disdain for Mexican American culture and to effectively disrupt, prevent, and break-up celebrations of Mexican American culture." Pls.' FAC, ¶ 7.  They pulled out wooden batons and one of the officers, Defendant Gandy, allegedly ran up to Plaintiff Duarte, grabbed him by the right shoulder, and threw him, face forward, to the ground.  Duarte claims that Officer Gandy placed his knees on Duarte's neck and head before another officer, Defendant Hachler, hit Duarte multiple times on the back and leg with his baton.

Plaintiff Gutierrez, for his part, after "seeing the phalanx of police officers approaching the crowd with batons out and swinging, decided he should leave" and began to jog away.  Id. at ¶ 17.  He states the police chased him and that after he stopped, Officer Nelson tackled him, with Officer Howard subsequently also striking Gutierrez multiple times with his wooden baton.

Not surprisingly, the police officers' version of events is strikingly different.  The FAC quotes extensively from the reports prepared as a result of the incident.  Officer Gandy wrote that Plaintiff Duarte had been ordered to leave the area.  When he did not, and after interfering with another suspect being taken into custody, the reports state that Officer Gandy took Duarte to the ground.  Officer Hachler helped gain control of Duarte after he continued to struggle with Officer Gandy and in the process used his baton to gain compliance.  Id. at ¶ 20.

Similarly, with respect to Plaintiff Gutierrez, the reports claim that Gutierrez yelled

3

at the officer, clenched his fists and assumed a fighting stance indicative of wanting to fight the officers before he too was taken down after he refused to stop. Id. at ¶ 19.

Plaintiffs claim these allegations were false and that body-worn camera footage contradict the Officers' statements. Plaintiffs were nonetheless taken into custody and charged by the San Joaquin County District Attorney's office with misdemeanor violations of California Penal Code § 148(a)(1), resisting arrest. According to the FAC, on the day of trial those charges were dismissed as to both Plaintiffs "in exchange for 10 hours of community service time" to be performed by both men, which they allegedly satisfied. Id. at ¶ 23.

In connection with the present Motion to Dismiss, Defendants have requested that the Court judicially notice certain documents, including the police reports, the criminal complaint lodged against the Defendants, and records from the criminal proceedings, including the pleas and dismissal entered in both cases.[5] The Court records show that both Defendants changed their pleas to the resisting arrest charges to "no contest" on July 12, 2018, which, as the FAC avers and as the Declaration of Victor Bachand also attests, was the day trial was scheduled to begin. The state court judge accepted the no contest pleas, but held them in abeyance provided Plaintiffs completed 10 hours of community service within the next six months. See RJN, Exs. B, E to Bachand Decl.

---

[5] Defendants' Request for Judicial Notice, ECF No. 17-3 ("RJN") is made on grounds that since the materials at issue are public records and pertain to court proceedings, they are properly subject to judicial notice. Bias v. Moynihan, 508 F.3d 121, 1225 (9th Cir. 2007). With regard to the police reports, the RJN makes it clear that the request does not extend to the truth of the matters asserted therein, but only for purposes of establishing the basis for Plaintiffs' subsequent incident-related convictions. RJN, 2:22-24. Plaintiffs nonetheless object to inclusion of both the reports and certain court documents, alleging that the police reports are "subject to reasonable dispute", and that some of the court documents were not properly docketed so as to be noted as official court records of the criminal proceedings. Those contentions are misplaced. First, as Defendants specifically note in the RJN itself, the police reports are offered only for foundational purposes and not to prove the truth of the matters asserted therein. Second, with respect to the court records, Plaintiffs object only to consideration of the plea forms they both executed. The Court is satisfied that those documents are indeed court records. Even if they were not, disposition of criminal charges is specifically discussed at ¶ 23 of the FAC, and as indicated above, the FAC also recites at length from the police reports themselves. Plaintiffs' counsel herself points to authority permitting a court to judicially notice matters beyond the four corners of the complaint either as public records or where the complaint relies on material not attached thereto. See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). Notwithstanding whether police reports and plea forms qualify as public records, they may be judicially noticed here as having been relied upon in the Complaint. Defendants' RJN is accordingly GRANTED.

4

The "nolo" pleas were memorialized by Minute Orders prepared the same day (id. at Exs. C. F) and both cases were subsequently dismissed on January 14, 2019, in the interests of justice once the requisite community service had been performed. Id. at Exs. D. G.

**STANDARD**

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard

5

to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570.  If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id.  However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend.  Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend).  Not all of these factors merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

## ANALYSIS

### A.     Plaintiffs' Third, Fourth and Fifth Claims are Barred by Heck

Under the Supreme Court's 1994 decision in Heck v. Humphrey, a plaintiff cannot

6

maintain a lawsuit seeking damages under 42 U.S.C. § 1983 if success in that lawsuit would "necessarily imply" the invalidity of a related prior criminal conviction, Heck, 512 U.S. at 487.  Consequently, Plaintiffs like Duarte and Gutierrez herein cannot bring an action asserting § 1983 claims which, if successful, would undermine a prior conviction for the same conduct unless they can prove the underlying conviction has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . ., or called into question by a federal court's issuance of a writ of habeas corpus." Heck, 512 U.S. at 486-477.

A claim is barred under Heck if the plaintiff "would have to negate an element of the offense of which he has been convicted" (id. at 486 n. 6) or make specific factual allegations inconsistent with his criminal conviction. Cunningham v. Gates, 312 F.3d 1148, 1154 (9th Cir. 2002).  "[If] a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed." Smith v. City of Hemet, 394 F.3d 689, 695 (2005).  According to Heck, then, a plaintiff cannot bring a § 1983 action unless there has been a "termination of the prior criminal proceeding [on which the 1983 claim is based] in favor of the accused." Heck, 512 U.S. 484.

In now moving to dismiss, Defendants argue that any relief granted pursuant to Plaintiffs' Third, Fourth and Fifth Claims (for false arrest and imprisonment under § 1983 and for filing false police reports in alleged contravention of Plaintiffs' due process rights), would undermine any "conviction" for Heck purposes as to the charges levied against Plaintiffs for resisting a police officer.  To the extent that Plaintiffs were indeed "convicted" as to the resisting charges, it seems axiomatic that any finding that they were falsely arrested, falsely imprisoned or were subject to false police reports would fly in the face of any such conviction.  The salient issue thus becomes whether Plaintiffs' no contest pleas to the charges qualify as a Heck conviction.

Defendants argue that Heck applies broadly to convictions and that the manner of conviction—whether by guilty verdict, guilty plea, or no contest plea—is immaterial.  The

Court agrees. See Szajer v. City of Los Angeles, 632 F.3d 607, 609, 612 (9th Cir. 2011); Radwan v. County of Orange, 519 F. App'x 490, 490-91 (9th Cir. 2013) ("We have repeatedly found Heck to bar § 1983 claims, even where . . . the plaintiff's prior convictions were the result of guilty or no contest pleas."); Nuño v. San Bernardino County, 58 F. Supp. 2d 1127, 1135 (C.D. Cal. 1999) ("[F]or purposes of the Heck analysis, a plea of nolo contendere in a California criminal action has the same effect as a guilty plea or a jury verdict of guilty."). Significantly for purposes of the present matter, the Nuño court remarked that "under Heck, what is relevant about plaintiff's nolo pleas and [his] resulting.. . convictions is the simple fact of their existence." Id. at 1136.

Plaintiffs try to distinguish this authority by alleging that even if they pleaded no contest, they were never actually "convicted" since the criminal charges against them were dismissed following their completion of community service; indeed, they go so far as to allege this amounted not to a conviction but to a "favorable termination" in their favor under Heck. Pls.' Opp., 7: 16-18. According to Plaintiffs, Heck cannot apply since "a conviction was never entered, and they received no sentence." Id. at 7: 25-26.

Although it does not appear that any court within the circuit has reached this particular issue, the Court ultimately finds Plaintiffs' position to be unpersuasive. The Court agrees with Defendants and finds the Third Circuit's decision in Gilles v. Davis, 427 F.3d 197, 210 (3d Cir. 2005), instructive in resolving the question. There, plaintiff Petit entered into an "Accelerated Rehabilitative Disposition" ("ARD") program, which permitted the expungement of his criminal record upon successful completion of a probationary term. He completed the program and sued law enforcement. Even though, like Duarte and Gutierrez, he was never formally convicted, the Third Circuit found that there had been no favorable termination of the underlying criminal proceedings, and therefore applied Heck. As the court stated:

> Petit cannot maintain a § 1983 claim unless successful completion of the ARD program constitutes a "termination of the prior criminal proceeding in favor of the accused." Heck, 512 U.S. at 485, 114 S.Ct. 2364. We have not had occasion to address this issue directly. Our trial courts, [however,] have

8

> held that ARD is not a termination favorable for purposes of bringing a subsequent § 1983 . . . claim.

Id.

The situation confronted by the Third Circuit is directly analogous to the circumstances with which this Court is confronted. Both instances deal with situations wherein criminal charges were ultimately dismissed following completion of diversion programs: here, through prescribed community service and in Giles through completion of the ARD program. Moreover, like Gilles, Plaintiffs here cannot plausibly argue that completing mandatory community service, after pleading no contest to a charge of resisting law enforcement, can possibly constitute a "favorable termination" of the proceedings for them. Consequently, Defendants' Motion to Dismiss the Third, Fourth and Fifth Claims as barred by Heck is GRANTED.

### B. The Municipal Defendants are Improperly Named in Plaintiffs' First and Second Claims

In addition to moving to dismiss portions of Plaintiffs' lawsuit on Heck grounds, Defendants City of Stockton and the Stockton Police Department, also seek dismissal of Plaintiffs' First and Second Claims, for excessive force in violation of 42 U.S.C. § 1983, on grounds that they cannot be considered "persons" subject to § 1983 liability. Section 1983 permits a "person" to be sued for the deprivation of federal rights, and municipalities or other governmental bodies can qualify as a "person" in that regard under the Supreme Court's decision in Monell v. Dept. of Social Servs. Of City of New York, 436 U.S. 658, 690 (1978). Nonetheless, according to Defendants, the Ninth Circuit has determined that qualifying governmental entities in that regard do not include police departments, since "municipal police departments and bureaus are generally not considered 'persons' within the meaning of 42 U.S.C. § 1983." United States v. Kama, 394 F.3d 1236, 1240 (9th Cir. 2005); see also Vance v. County of Santa Clara, 928 F. Supp. 993, 996 (N.D. Cal. 1996) ("[T]he term 'persons' does not encompass municipal departments."). Importantly, the rationale of Kama has been adopted by

several judges within this district, including the undersigned.  See, e.g., Sanders v. Aranas, No. 1:06-cv-1574, 2008 WL 268972 at 2-3 (E.D. Cal. 2008); Brockmeier v. Solano County Sheriff's Dept., No. 2:05-cv-2090 MCE EFB PS, 2006 WL 3760276 at *4 (E.D. Cal. 2006).

Plaintiffs, in opposition, contend the matter is not nearly as clear-cut as Defendants suggest. They argue that the Kama decision relied on by Defendants is a concurring opinion.  While conceding that several district courts have relied on Kama to dismiss police and sheriff departments as improper § 1983 defendants, Plaintiffs argue that another line of cases has found otherwise following a Ninth Circuit case decided prior to Kama, Streit v. County of Los Angeles, 236 F. 3d 552 565 (9th Cir. 2001).  While it is true that other district courts, including Courts within the Eastern District, have relied on the 2001 Streit decision, it represents an earlier pronouncement of Ninth Circuit authority than the 2005 Kama opinion, and relies on case law from the 1980s, including Karim Panahi v. L.A. Police Dep't, 839 F.2d 621, 624 n.2 (9th Cir. 1986) and Shaw v. Cal. Dep't of Alcoholic Beverage Control, 788 F.2d 600, 604 (9th Cir.1986).

Because the Kama case represents the Ninth Circuit's most recent pronouncement on the liability of a police department under 42 U.S.C. § 1983, this Court believes it should be followed.  Defendants' Motion to Dismiss the Stockton Police Department and the City of Stockton, under which the police department operates, is accordingly GRANTED.[6]

**CONCLUSION**

For all the above reasons, Defendants' Motion to Dismiss (ECF No. 17) is GRANTED as follows:

1. As Plaintiffs have conceded, the First, Second, Third and Fourth Claims are

---

[6] Plaintiffs' Opposition is directly solely to the Stockton Police Department and contains no specific argument, besides that directed to the police department, that the City of Stockton is a viable party. Therefore, Defendants' Motion is GRANTED as to the City of Stockton as well.

DISMISSED to the extent they are predicated on alleged Fourteenth Amendment violations;

2. Plaintiffs' Third, Fourth and Fifth Claims dismissed on grounds that they are barred by Heck, and because the Court believes further leave to amend would be futile, that dismissal is without leave to amend;

3. Defendants' Motion to Dismiss Defendants City of Stockton and the Stockton Police Department from the First and Second Claims is GRANTED also without leave to amend.

4. This case shall proceed on Plaintiffs' remaining claims.

IT IS SO ORDERED.

Dated:  May 21, 2020

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE