UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO DUARTE and ALEJANDRO GUTIERREZ,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF STOCKTON, STOCKTON POLICE DEPARTMENT, ERIC JONES, KEVIN JAYE HACHLER (1641); ERIC B. HOWARD (2448); MICHAEL GANDY (2858); CONNER NELSON (2613); SGT. UNDERWOOD, and DOES 1-100,<br><br>Defendants. | No. 2:19-cv-00007-MCE-CKD<br><br><br>**MEMORANDUM AND ORDER** |

Through the present lawsuit, Plaintiffs Francisco Duarte and Alejandro Gutierrez (collectively "Plaintiffs" unless otherwise specified) allege they were subjected to excessive force while being arrested by members of the Stockton Police Department. As presently constituted, Plaintiffs' operative First Amended Complaint ("FAC") contains two causes of action against Officers Eric Jones, Kevin Hachler, Eric Howard, Michael Gandy, Conner Nelson and Sergeant Underwood (collectively "Defendants" unless otherwise specified), who are named as individual defendants. Both the First and Second Claims are brought under 42 U.S.C. § 1983 ("§ 1983") for excessive force under

1

the Fourth Amendment of the United States Constitution and are separately pled on behalf of Plaintiffs Duarte and Gutierrez, respectively.  Now before the Court is Defendants' Motion for Summary Judgment (ECF No. 52) brought on grounds that both of Plaintiffs' claims are barred by the Supreme Court's decision in Heck v. Humphrey, 512 U.S. 477 (1994) ("Heck").  Defendants' Motion is GRANTED.[1]

## BACKGROUND

This case stems from an encounter between Plaintiffs and police officers that occurred on May 5, 2017, at the corner of South Hunter Street and Martin Luther King Boulevard in Stockton, California.  A large, and predominantly Mexican-American, crowd had gathered to celebrate the so-called "Cinco de Mayo" holiday.  Plaintiffs, who are both Mexican-American, were in attendance but arrived separately.  Defs.' Statement of Undisputed Fact ("UF") 1-2, FAC, ¶¶ 2-3, 5.  Both claim they went to the intersection to purchase food from a taco truck parked nearby.  Plaintiff Duarte estimated that around 100 other individuals were present.  UF 3-4.

Defendants responded to the scene after receiving an anonymous report of shots being fired and so-called "sideshow" activity[2] taking place at the intersection.  UF 5.  The Stockton Municipal Code, at Ch. 10.56, prohibits spectators at illegal street racing, reckless driving, or illegal demonstrations of speed.  UF 7.

According to Defendants, after observing Defendant Gutierrez standing in the street at approximately 11:05 p.m., officers instructed him to get out of the roadway.  Once Gutierrez moved to the sidewalk, several officers started to leave the area, but observed Gutierrez going back into the street as they did so.  UF 14.  One of the responding officers, Defendant Howard, testified at deposition that he then decided to

---

[1] Having determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs in accordance with E.D. Local Rule 230(g).

[2] "Sideshows" generally refer to an informal and illegal demonstration of automobile stunts.  Such stunts usually occur in vacant areas or parking lots, but sometimes take place on public streets.  UF 6.

2

detain Gutierrez for continuing to stand in the roadway despite orders to the contrary. Dep. of Howard, Defs.' Ex. E, 51:19-52:17; 55:19-56:13.  When another officer, Nelson, told Gutierrez to "come here," however, Gutierrez ran.  Nelson Dep., Defs.' Ex C, 33:22-25.  The officers gave chase, and when Gutierrez paused momentarily and pivoted around, he was tackled by Nelson, who, with the assistance of Officer Howard, then handcuffed Gutierrez.  UF 27, 29.  Once Gutierrez was placed under arrest for resisting, obstructing, and/or delaying a peace officer in contravention of California Penal Code § 148 ("§ 148") and for blocking traffic in violation of Vehicle Code § 21950(b), no officer struck or hit him.  UF 33-34.

Plaintiff Duarte, for his part, states that he observed police vehicles arrive and block the intersection as he was eating the food he had purchased.  UF 38.  Curious at why police were present, he walked to the corner and saw Gutierrez in the street.  UF 39-41.  Duarte then decided to walk back to his nearby vehicle, and, as he walked behind a row of parked cars he states he suddenly came upon Gutierrez and several police officers on the ground.  UF 44-45.  Since one of the officers was only three or four feet away, Duarte claims he "froze," and denies hearing any officer tell him to "back up" despite the fact that a body camera worn by another responding officer, Defendant Gandy, confirms that Gandy instructed Duarte to back up twice.  UF 46, 48-49, 52.  Additionally, while Duarte claims he also did not say anything before being taken to the ground by the officers, he confirmed at deposition that a voice on one of the body cams saying "don't push me" in response to an officer telling him to back up was indeed his own.  UF 50-51.

Defendant Gandy testified he ultimately took Duarte to the ground after Duarte refused to back up from the ongoing police intervention involving Gutierrez.  UF 53-54. Defendant Hachler, who assisted, testified that after observing Duarte struggling and trying to pull his arm away, he told Duarte to "give up his hands" and when he refused to do so, Hachler struck Duarte once on the left leg with his baton, which enabled him to

///

3

access Duarte's right hand to complete his handcuffing.  See Hachler Dep., Defs.' Ex. D, 77:1-17; 81:10-20; 83:14-21; 85:21-24; 87:4-23.³

Like Gutierrez, at no time after being placed in handcuffs was Duarte struck or hit by a police officer.  UF 65.  Also like Gutierrez, Duarte was arrested for resisting, obstructing or delaying a peace officer under § 148.  UF 64.

On May 15, 2017, the San Joaquin County District Attorney's Office filed a criminal complaint, in San Joaquin County Superior Court, against both Plaintiffs in accordance with § 148 for their conduct during the foregoing altercation.  UF 66-67.  Shortly before Plaintiffs' trial was scheduled to begin on those charges, they changed their prior "not guilty" pleas to pleas of "no contest" to the charges.  It was agreed to hold those no contest pleas "in abeyance" pending the completion, by both Gutierrez and Duarte, of ten hours of community service to be performed within six months of the change of plea.  Under the terms of that arrangement, the court agreed to later dismiss the no contest pleas provided the requisite community service was completed within the prescribed time.  In fact, the cases against both Plaintiffs were ultimately dismissed.  See Decl. of Victor Bachand,⁴ ECF No. 17-3, pp. 24-26, ¶¶ 3-7; Misdemeanor Advisement of Rights, Waiver and Plea Forms, Defs.' Exs. J and K.

Plaintiffs instituted the present lawsuit in federal court on December 31, 2018, even before the state court charges against them were dismissed.  Plaintiffs' original Complaint (ECF No. 1) included ten different causes of action.  On August 28, 2019, Plaintiffs filed a Motion to Amend Complaint (ECF No. 9) which, being unopposed, was granted by Court Order filed October 29, 2019.  The currently operative FAC was thereafter filed on November 13, 2019 (ECF No. 16), and, as opposed to its predecessor, contained a streamlined five as opposed to ten claims.  In addition to two claims for excessive force under § 1983, both Duarte and Gutierrez also included

---

³ Duarte, on the other hand, estimates he was struck more than six times with the baton.  UF 61.

⁴ Mr. Bachand was the Deputy District Attorney assigned to prosecute the criminal charges levied against Plaintiffs.  Plaintiffs' current counsel in this case, Yolanda Huang, also represented them both throughout the underlying criminal proceedings.

4

constitutionally based claims for false arrest and false imprisonment along with a final claim alleging substantive due process violations against Defendants for allegedly filing false police reports.

Defendants moved to dismiss portions of the FAC on November 27, 2019. ECF No. 17. With respect to the First and Second Claims alleging excessive force, Defendants argued that the City of Stockton and the Stockton Police Department were improperly named as Defendants. Additionally, as to the remaining three causes of action, alleging false arrest/imprisonment as to both Plaintiffs and the filing of false police reports against various individually-named Defendants, the Court found those claims to be barred by Heck. By Memorandum and Order issued May 22, 2020 (ECF No. 35), the Court granted Defendants' Motion in its entirety, leaving at issue only the First and Second Claims as directed against the individual Defendants.

On September 16, 2020, with the benefit of discovery that had been undertaken by both parties, Defendants moved for summary judgment as to the remaining two claims, arguing that they too are precluded by Heck. ECF No. 52.[5] That motion is presently before the Court for adjudication.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

---

[5] Plaintiffs appear to argue in opposition that Defendants have failed to provide "fair notice" of their claim that Heck applies because, once the Court granted Defendants' Motion to Dismiss on all claims except the First and Second Claims for excessive force under § 1983, Defendants made those remaining claims at issue by filing the present motion for summary judgment rather than an answer pleading Heck as an affirmative defense. Given those circumstances the Court rejects any claim that Plaintiffs lacked fair notice of the Heck defense.

5

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore,

"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. at 587.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

### A. Dismissal of the Charges Against Plaintiffs After Completion of Community Service Does Not Circumvent the Heck Bar.

Plaintiffs' remaining causes of action are barred by Heck. Under that 1994 Supreme Court decision, a plaintiff cannot maintain a lawsuit seeking damages under 42 U.S.C. § 1983 if success in that lawsuit would "necessarily imply" the invalidity of a related prior "conviction or sentence." Heck, 512 U.S. at 487. Consequently, plaintiffs like Duarte and Gutierrez herein cannot bring an action asserting § 1983 claims which, if successful, would undermine a prior conviction or sentence for the same conduct unless they can prove the underlying conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . ., or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-487.

A claim is barred under Heck if the plaintiff "would have to negate an element of the offense" of which he has been convicted or sentenced (id. at 486 n. 6) or make specific factual allegations inconsistent with such criminal conviction or sentence. Cunningham v. Gates, 312 F.3d 1148, 1154 (9th Cir. 2002). Consequently, if a criminal conviction or sentence "arising out of the same facts stands and is fundamentally

7

inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed." Smith v. City of Hemet, 394 F.3d 689, 695 (2005), According to Heck, then, a plaintiff cannot bring a § 1983 action unless there has been a "termination of the prior criminal proceeding [on which the § 1983 claim is based] in favor of the accused." Heck, 512 U.S. at 484, 486.

Heck, in keeping with the sweeping language it employs, applies broadly to either "convictions or sentences." Id. at 487. Consequently, on its face Heck would seem to apply to the community-service sentence Plaintiffs received in response to plea of nolo contendere. In addition, case law instructs that the manner of conviction—whether by guilty verdict, guilty plea, or no contest plea—is immaterial. See Szajer v. City of Los Angeles, 632 F.3d 607, 609, 612 (9th Cir. 2011); Radwan v. County of Orange, 519 F. App'x 490, 490-91 (9th Cir. 2013) ("We have repeatedly found Heck to bar § 1983 claims, even where . . . the plaintiff's prior convictions were the result of guilty or no contest pleas."); Nuno v. San Bernardino County, 58 F. Supp. 2d 1127, 1135 (D.D. Cal. 1999) ("[F]or purposes of the Heck analysis, a plea of nolo contendere in a California criminal action has the same effect as a guilty plea or a jury verdict of guilty."). Significantly for purposes of the present matter, the Nuno court remarked that "under Heck, what is relevant about plaintiff's nolo pleas . . . is the simple fact of their existence." Id. at 1136.

Plaintiffs nonetheless argue that even if they pleaded no contest, they were never actually "convicted" since the criminal charges against them were dismissed following their completion of community service. Therefore, according to Plaintiffs, Heck is not implicated. Although it does not appear that any court within the circuit has reached this particular issue, the Court ultimately finds Plaintiffs' position to be unpersuasive. In Gilles v. Davis, 427 F.3d 197, 210 (3d Cir. 2005), a plaintiff entered into an "Accelerated Rehabilitative Disposition" ("ARD") program, which permitted the expungement of his criminal record upon successful completion of a probationary term. He completed the program and sued law enforcement. Even though, like Duarte and Gutierrez, the plaintiff

8

was never formally convicted, the Third Circuit found that there had been no favorable termination of the underlying criminal proceedings, and therefore applied Heck. As the court stated:

> [The plaintiff] cannot maintain a § 1983 claim unless successful completion of the ARD program constitutes a "termination of the prior criminal proceeding in favor of the accused." Heck, 512 U.S. at 485, 114 S. Ct. 2364. We have not had occasion to address this issue directly. Our trial courts, [however,] have held that ARD is not a termination favorable for purposes of bringing a subsequent § 1983 . . . claim.

Id.

The situation confronted by the Third Circuit is directly analogous to the circumstances with which this Court is confronted. Both cases were decided in the same procedural context: where criminal charges were ultimately dismissed following completion of diversion programs: here, through prescribed community service and in Gilles through completion of the ARD program.[6] Moreover, like Gilles, Plaintiffs here cannot plausibly argue that completing mandatory community service, after pleading no contest to a charge of resisting law enforcement, can possibly constitute a "favorable termination" of the proceedings on their behalf so as to circumvent the Heck bar.

**B.   Given the Disposition of the Charges Against Plaintiffs for Violation of California Penal Code § 148, Their Excessive Force Claims are Barred by Heck.**

California law makes it clear that the underlying lawfulness of an arrest is "an essential element of the offense of resisting or obstructing a peace officer" under § 148, since the use of excessive force by a police officer is not considered within the lawful purview of his or her duties. Susag v. City of Lake Forest, 94 Cal. App. 4th 1401 (2002), citing People v. Simons, 42 Cal. App. 4th 1100, 1109 (1996); Nuno, 58 F. Supp. 2d at 1133, citing People v. Olguin, 119 Cal. App. 3d 39, 44 (1981) ("Since the officer must be acting in the performance of his duty, the use of excessive force renders it impossible for

---

[6] Although that plaintiff's underlying criminal conduct pertained to disorderly conduct, as opposed to the obstructing/resisting arrest charges present here, both were predicates for later civil claims asserted under § 1983, and the logic employed by the Gilles court is equally applicable here.

an arrestee to violate section 148."). Even more significantly, the Ninth Circuit went on to explain in Nuno, Heck itself recognized "that a successful § 1983 action, premised on a police officer's use of excessive force during an arrest, would necessarily imply the invalidity of a plaintiff's conviction for resisting that arrest in a state [like California], where the lawfulness of the resisted arrest was a prima face element of the resisting-arrest offense." Id., citing Heck, 512 U.S. at 486 n. 6.  Therefore, a conviction or sentence for violation of § 148 determines the lawfulness of the underlying arrest, and a § 1983 action alleging that excessive force was employed in the course of the arrest would, if proved, negate the viability of a resisting arrest violation under § 148, and would therefore be barred by Heck. Nuno, 58 F. Supp. 2d at 1133.

In Muhammad v. Garrett, 66 F. Supp. 3d 1287 (E.D. Cal. 2014), the plaintiff was charged, among other things, with resisting arrest in violation of § 148.  After a police officer determined that plaintiff appeared to be under the influence of drugs and decided to effectuate an arrest, the plaintiff ignored his order to remain seated, stood up, broke free and began running.  Other officers responded and the plaintiff disregarded multiple orders to stop.  The officers ultimately had to take plaintiff to the ground and in attempting to subdue him used a baton to ultimately gain control.  Id. at 1290-91.  Plaintiff was convicted of several crimes including resisting arrest, and then, like Plaintiffs herein, brought a § 1983 action alleging excessive force under the Fourth Amendment despite his § 148 conviction.[7] Also like Gutierrez and Duarte, the plaintiff in Muhammad denied any wrongdoing, claiming that he was always compliant and never offered any resistance whatsoever. Id. at 1298.[8]  Significantly, too, neither case involves acts of resistance that were separate from the arrest itself.  Instead, as the Muhammad court noted, the excessive force allegations made by the plaintiff in his civil rights action were,

---

[7] While Plaintiffs try to distinguish Muhammad on grounds that the plaintiff there was convicted of a § 148 violation and they were not, for the reasons stated above, that is a distinction without a difference. Nuno, 58 F. Supp. 2d at 1135.

[8] It is undisputed that both Plaintiffs allege they did nothing wrong and that the deputies had no cause whatsoever to arrest them on the night in question.  UF 70-71.

10

1  like those made by Plaintiffs here, necessarily the same acts underlying the § 148
2  charges for which Muhammad was convicted and Gutierrez and Duarte pled no contest.
3  Id.  In other words, "[t]here was no spatial or temporal distinction between the acts for
4  which [they were convicted or sentenced] and the acts of the [police officer]." Id. at
5  1299, citing Smith, 394 F.3d at 699.
6      In the present case, for example, neither Plaintiff alleges that they were subjected
7  to any force at all, let alone excessive force, once they were handcuffed.  Nor were there
8  any separate acts of resistance apart from those that led directly to the arrest.  As a
9  result, the excessive force allegations made here "are not divisible" from those for which
10 Plaintiffs were sentenced under § 148.  Muhammad, 66 F. Supp. 3d at 1298 ("Plaintiff
11 does not claim that the conviction for… resisting arrest was based upon acts of
12 resistance… that [were] separate from the arrest itself.").
13     The cases that do have "divisible" excessive force allegations, and are relied upon
14 by Plaintiff for the proposition that a § 148 conviction does not necessarily bar a
15 subsequent civil rights suit for excessive force under § 1983, are distinguishable.  In
16 Hooper v. County of San Diego, 629 F.3d 1127 (9th Cir. 2011), for example, a loss
17 prevention officer handcuffed the plaintiff after suspecting her of petty theft.  Once a
18 deputy sheriff arrived, he removed the handcuffs because the plaintiff appeared
19 compliant.  After the deputy found methamphetamine in her car and told her she was
20 under arrest for possession, however, she jerked away and a struggle ensued.  Although
21 the deputy allegedly succeeded in getting plaintiff under restraint, he nonetheless
22 summoned his German shepherd, and the dog proceeded to bite plaintiff's head several
23 times and tore off large portions of her scalp.  While plaintiff ultimately pled guilty to
24 resisting arrest under § 148, and did not dispute the lawfulness of her arrest, she later
25 brought suit under § 1983 claiming that the force used by the deputy was still excessive.
26 Although the district court found those claims to be barred under Heck, the Ninth Circuit
27 disagreed.
28     According to the Ninth Circuit, it could distinguish the facts in Hooper's case from

11

other cases because in Hooper it could differentiate between two phases of that plaintiff's encounters with law enforcement.  Although the Ninth Circuit found that Hooper's arrest was effectuated during a single continuous chain of events lasting a very brief time (id. at 1131), the Hooper court noted that even such a continuous transaction may still survive Heck scrutiny as long as "at some point" during the same transaction in which the plaintiff unlawfully resisted arrest the officer proceeded to separately "use[] excessive force or [to] otherwise act[] unlawfully." Id. at 1132.  In that circumstance, the court reasoned "two isolated factual contexts would exist, the first giving rise to criminal liability on the part of the criminal defendant, and the second giving rise to civil liability on the part of the arresting officer." Id., citing Yount v. City of Sacramento, 43 Cal. 4th 885, 889.  Therefore, the viability of a § 148 conviction is not compromised by a later civil rights suit under § 1983 as long as the officer responded lawfully to the resistance using appropriate force, and "[i]t does not matter that the officer might also, at some other time during the same 'continuous transaction,' have acted unlawfully." Id. Consequently, according to Hooper, as long as the § 148 claims may be based "on different actions" during that same transaction, a § 1983 excessive force claims is not Heck-barred based upon a conviction under § 148. Hooper, 629 F.3d at 1134.

      Hooper and the other cases relied upon by Plaintiffs are distinguishable from the instant matter because they all involved different acts on the part of law enforcement, some of which were in measured response to the plaintiffs' resistance and some arguably were not.  The present case, on the other hand, involves no discrete acts by the deputies that can be pegged as unreasonable force separate from the means employed to take both Plaintiffs into custody, which their no contest pleas to § 148 necessarily make lawful.  Gutierrez' refusal to follow instructions to "come here," and his decision instead to run, prompted the officer to give chase and to ultimately tackle and handcuff him.  Duarte, too, disobeyed directives to back up from an ongoing struggle between officers and Gutierrez before he too was taken to the ground by the officers. The fact that one of the assisting officers had to use a baton in order to get Duarte

1 handcuffed does not detract from the conclusion that all of the police action directed to Duarte (and to Gutierrez as well) was simply to get them initially restrained.  Both Plaintiffs admit that they were not subjected to any force thereafter.  Thus, denominating the acts of the individual Defendants here as unreasonable cannot be reconciled with Plaintiffs' no-contest pleas,[9] and their claims for excessive force in contravention of 42 U.S.C. § 1983 are barred by Heck.[10]  Defendants are therefore entitled to judgment as a matter of law on Plaintiffs' remaining First and Second Causes of Action.

## CONCLUSION

For all the above reasons, Defendants' Motion for Summary Judgment (ECF No. 52) is GRANTED, in its entirety.[11]  Because this terminates the case, the Clerk of Court is accordingly directed to enter judgment in Defendants' favor and against Plaintiffs and to close the file.

IT IS SO ORDERED.

DATED:  October 22, 2021

_____
MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE

---

[9] Whether or not Plaintiffs should have pled no contest to the § 148 charges pled against them is not a matter on which this Court will opine.  The fact remains that they did so, while represented by the same counsel representing them in these proceedings, and since their pleas amounted to a concession that the force used to arrest them for violating § 148 was reasonable, that is the only dispositive factor here.

[10] Having determined that Plaintiffs' remaining First and Second Claims are barred by Heck, the Court need not determine the merit of Defendants' alternative arguments that the force they employed was objectively reasonable or that they are entitled to qualified immunity under the circumstances of this matter in any event.  Accordingly, it declines to do so.  Moreover, it is equally unnecessary for the Court to determine whether any Defendant had any supervisorial liability, or any custom, practice or policy liability under Monell as to the excessive force allegations pled by Plaintiffs, since the claims themselves are barred in the first instance.

[11] The Court notes that Defendants have filed formal objections (ECF No. 62-3) to certain evidence proffered by Plaintiffs.  To the extent that the declaration submitted by Plaintiff Gutierrez is inconsistent with his deposition testimony, the declaration is a "sham" and cannot be used to avoid summary judgment.  See, e.g., Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 267 (9th Cir. 1991).  Defendants' objection to the Gutierrez declaration is accordingly sustained on that basis.  Because the remaining evidentiary items to which objections were interposed have not been relied upon in reaching the foregoing decision, they need not be ruled upon at this time and the Court declines to do so.