UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO DUARTE, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>STOCKTON CITY, et al.,<br><br>　　　　Defendants. | No. 2:19-cv-00007-MCE-CKD<br><br>**MEMORANDUM AND ORDER** |

　　　　Through the present lawsuit, Plaintiffs Francisco Duarte and Alejandro Gutierrez (collectively "Plaintiffs" unless otherwise specified) alleged they were subjected to excessive force while being falsely arrested by members of the Stockton Police Department. Plaintiffs' operative First Amended Complaint ("FAC") contains causes of action directed toward Defendants City of Stockton, the Stockton Police Department ("SPD"), Police Chief Eric Jones, Officers Kevin Hachler, Eric Howard, Michael Gandy, Conner Nelson and Sergeant Underwood (collectively "Defendants" unless otherwise specified). Both Plaintiffs sought to recover for: (1) excessive force under the Fourth and Fourteenth Amendments to the United States Constitution; (2) false arrest and false imprisonment in violation of the Fourth and Fourteenth Amendments; and (3) violation of substantive due process for the falsifying of police reports.

The Court previously granted a motion to dismiss and a motion for summary judgment filed by Defendants, holding that each of Plaintiff's claims was barred under Heck v. Humphrey, 512 U.S. 477 (1994) and that neither the Stockton Police Department or City of Stockton were "persons" under 42 U.S.C. § 1983.[1] Duarte appealed, and the Ninth Circuit reversed this Court's decisions, remanding for further proceedings.[2]

On remand, the Court agreed to consider the arguments it did not reach in Defendants' original motion for summary judgment and directed that Defendants file a renewed motion.  ECF No. 131.  The Court also indicated that it would entertain arguments as to causes of action that had been dismissed prior to the original summary judgment briefing, namely as to false arrest and municipal liability.  Id.[3]  Presently before the Court is Defendants' renewed Motion for Summary Judgment, which is fully briefed.  ECF No.  137, 141, 142.  For the following reasons, that Motion is GRANTED.[4]

---

[1] Defendants also moved to dismiss the excessive force and false arrest claims to the extent they were based on the Fourteenth Amendment.  Plaintiffs conceded that those causes of action should properly be analyzed under the Fourth Amendment, so the Fourteenth Amendment is no longer at issue. See ECF No. 24, at 13:19-24; ECF No. 35, at 10:26-11:2.

[2] Gutierrez did not appeal and instead reached a settlement with Defendants.  See ECF No. 76-3.  His claims are no longer before the Court.

[3] Duarte's contention that the Court only intended to consider arguments as to the false arrest and municipal liability claims and not the excessive force causes of action, see ECF No. 141 at 6, is wrong and based on a clear misreading of the Court's order.  The Court will consider arguments as to excessive force, false arrest, municipal liability.  Duarte's due process claim, however, is no longer before the Court because he did not appeal from the dismissal of that cause of action.  See Ninth Circuit Case No. 21-16929, Duarte's Opening Brief, ECF No. 15, at 8 n.2 ("Mr. Duarte also raised a substantive due process claim under the Fourteenth Amendment, the dismissal of which he does not appeal. ER-99.").  The Ninth Circuit did not consider that cause of action, did not reverse this Court's dismissal of it, and it therefore falls outside the scope of the remand order.  See Duarte v. City of Stockton, 60 F.4th 566, 568 (9th Cir. 2023) ("In this 42 U.S.C. § 1983 action, Francisco Duarte appeals from the dismissal of his false arrest and municipal liability claims, as well as the adverse grant of summary judgment on his excessive force claim."); id. at 574 ("We reverse the district court's dismissal of Duarte's false arrest and municipal liability claims. We also reverse the summary judgment in favor of the individual Appellees on Duarte's excessive force claim. We remand for further proceedings consistent with this opinion.").

[4] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs.  See E.D. Cal. Local R. 230(g).

# BACKGROUND[5]

In the late evening of May 5, 2017, four calls were made to the SPD reporting that "sideshow" activity was occurring at and in the vicinity of the intersection at Clay and Hunter Streets.[6] All of these calls were placed between 10:44 p.m. and 10:52 p.m. Two of the callers reported hearing gunshots being fired in the area.[7] Defendants Nelson, Hachler, Howard, and Gandy were among those officers that responded to these calls.

Duarte had arrived at this intersection between 10:15 p.m. and 10:30 p.m. to purchase food from a taco truck. Gutierrez, with whom Duarte was not previously acquainted, was there for the same reason. By Duarte's estimation, there were 80-100 people at the intersection when he arrived, and that number had increased to 100 or a little over 100 as he waited for his food.

Duarte saw at least six to ten officers appear at the intersection, and the officers parked their vehicles in such a way as to block the thoroughfare. Several minutes later, Duarte decided to leave. As he was attempting to walk back to his car, Officer Nelson (with Officers Hachler and Gandy nearby) was in the process of arresting and handcuffing Gutierrez and had taken Gutierrez down to the ground between two parked

---

[5] Unless otherwise indicated, the following material facts are undisputed and are taken, at times verbatim, from Defendants' Statement of Undisputed Material Facts ("Defs. SSUMF") and Plaintiff's Responses and Objections thereto ("Pl. Response"). ECF No. 141-1.

[6] "Sideshows" are an illegal demonstration of automotive stunts in vacant lots, parking lots, and on public streets. Defendants' expert opined that sideshows "include illegal vehicular citable and towable offenses, criminal activity and nuisance-disturbing the peace." Expert Report of Jeffrey R. Hislop, ECF No. 52-16, at 6. According to Mr. Hislop:

> The activity is also dangerous and presents a high risk for injury and/or death to the participants, spectators, and the general public. The responding law enforcement officers are also put into a high-risk situation where they are outnumbered and confronted by angry, intoxicated crowds which may include armed individuals. The enforcement is highly stressful and dangerous for the responding law enforcement services.

Id. The City of Stockton Municipal Code prohibits spectators from attending sideshows.

[7] Whether or not sideshow activities actually took place or any shots were fired is disputed. For purposes of the instant Motion, however, all that matters is that there were multiple reports of such activities and that officers responded based on those reports.

cars. While walking back towards his car, Duarte could see Gutierrez and police officers on the ground. When Duarte first saw the officers and Gutierrez, he was three to four feet away from an officer. He froze, put his hands up, and leaned back.

By then Gandy was assisting Nelson in arresting Gutierrez when he felt someone, who turned out to be Duarte, behind him.[8] Gandy instructed Duarte twice to "get back." Duarte, however, did not hear any officers giving any commands and did not hear any officer say "get back" to him. Duarte thus failed to comply with Gandy's orders, and Gandy proceeded to try to grab him.[9]

Duarte can be heard on body worn camera footage saying "don't push me" in response to an officer instructing him to get back. Duarte said this after Officer Gandy first tried to grab him. After Duarte said, "Don't push me," Officer Gandy grabbed Duarte by his right shoulder and took him to the ground, with Gandy falling on top of Duarte.

At that point Hachler moved in to assist Gandy. Duarte had fallen forward on top of his hands, pinning them with his own bodyweight (and the weight of Gandy, who was on top of him). Hachler observed what he believed was Duarte struggling and attempting to pull his arm away. Hachler also saw that Gandy was having difficulty gaining control of Duarte's arms. Hachler reports that he saw one of Duarte's hands was underneath him, near his waistband.[10] When Hachler got to Duarte, he told Duarte to

---

[8] Defendants' version of events differs slightly. Defendants contend Gandy "saw" Duarte, but Duarte contends that Gandy's testimony actually indicated that he could not see and he felt someone there instead. The distinction is immaterial, but the Court nonetheless adopts Plaintiff's version of events for purposes of this Motion. See Defs. SSUMF and Pl. Response, ECF No. 141-1, No. 26.

[9] Duarte purports to dispute this fact, but in actuality, he simply points out that three second elapsed between the first time Officer Gandy said "get back" and Duarte being thrown to the ground. While Duarte argues that "[he] would not have even had sufficient time to react or move, even if he had heard the order," he offers only: (1) his own speculation in support of that conclusion, Duarte Decl., ECF No. 58-3, at ¶ 3; and (2) the synopsis of a paralegal, who offers her observations of what she sees on the officers' body cam videos, Decl. of Jenna Swartz, ECF No. 58-6. Pl. Response at No. 19. Nothing in the record indicates that Ms. Swartz has any specialized knowledge that equips her to testify as to the contents of the videos. Her testimony is thus irrelevant and will be disregarded. The videos speak for themselves.

[10] Again, Duarte purports to dispute this fact, but he merely argues that it was dark and that events cannot be discerned from the video. He does not dispute, however, that he had his hands underneath him or that one was near his waistband.

"give him your hand," Duarte admits he was told to place his hands behind his back and that he was yelling "I didn't do anything." Duarte contends he could not place his arms behind his back because they were pinned beneath him, but he does not recall telling the officers he was unable to comply.

Hachler then struck Duarte on the left leg with his baton. According to Defendants, Hackler struck Duarte only once. Duarte testifies, however, that he believes he was hit at least six times. Duarte Decl., ECF No. 58-3, ¶ 6. Gandy and Hachler were thereafter able to get to Duarte's hands and handcuff him, arresting him for resisting, obstructing, or delaying a peace officer under California Penal Code § 148(a). At no point after Duarte was placed in handcuffs did any officer strike or hit him.

Duarte immediately advised officers that his leg was broken. Gandy had him walk on his injured leg to a patrol vehicle and drove him to the hospital where an X-ray confirmed he had a broken ankle.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378–79 (C.D. Cal. 1995). The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic

Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288–89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251–52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under

Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

### A. Officers Nelson and Howard

Defendants contend that Officers Nelson and Howard are entitled to judgment because Duarte does not name them as Defendants with regard to his remaining claims, and, regardless, he has not set forth any evidence implicating them in either of those causes of action. Duarte does not respond to this argument in his Opposition, but in his Response to Defendants' Statement of Undisputed Material Facts, he appears to contend only that Nelson and Howard are implicated in this fifth claim for falsifying police reports. See ECF No. 141-1, at No. 39. Because the Court has already determined that the fifth cause of action is no longer at issue, this argument is unpersuasive. Defendants' Motion is thus GRANTED as to Defendants Nelson and Howard.

### B. Sergeant Underwood and Chief Jones

According to Defendants, judgment should be entered in favor of Sergeant Underwood and Chief Jones, both of whom are sued in their individual capacities, because it is undisputed that neither of them participated in Duarte's arrest. Underwood

arrived after Duarte had been arrested, and Jones was not on the scene at any point that night.[11]

Plaintiff disagrees, arguing that both Underwood and Jones are liable as supervisors. As to Sergeant Underwood, Plaintiff contends that "[a]s the direct supervisor, Sgt. Underwood failed to investigate the situation." ECF No. 141 at 20. Plaintiff believes that Underwood should at least have provided his own written report regarding the incident. Id. With regard to Chief Jones, Plaintiff takes the positions that: (1) "under [his] command, none of . . . SPD's officers has ever been terminated for use of unreasonable or excessive force"; (2) "Stockton and SPD have settled numerous lawsuits for substantial sums of money . . . , indicating that several instances of use of force by SPD officers were not justified"; and (3) "several lawsuits remain pending against Defendants City, SPD, Jones, and/or their officers which relate to alleged improper uses of force." Id.

First, as to Sergeant Underwood, Duarte has offered no evidence that Underwood did not investigate the events of May 5, 2017, or that he did not review Hachler's report. Moreover, Duarte points to no authority indicating that either of these supposed shortcomings give rise to any sort of constitutional injury.[12]

Second, as to Chief Jones, Duarte has not offered any evidence to show that Jones had a constitutional duty to discipline officers. See Booke v. County of Fresno, 98 F. Supp. 3d 1103, 1129 (E.D. Cal. 2015) ("The mere failure to discipline does not show

---

[11] For this reason, the Court rejects Duarte's argument in his Separate Statement of Disputed Facts, ECF No. 141-2, at No. 62, that Underwood should be held liable for failing to intervene. He could not intervene when he was not present.

[12] In fact, Defendants point to authority holding directly to the contrary. See Motley v. Parks, 432 F.3d 1072, 1081 (9th Cir. 2005) ("[A]bsent some indication to a supervisor that an investigation was inadequate or incompetent, supervisors are not obliged either to undertake de novo investigations or to cross examine subordinates reasonably believed to be competent as to whether their investigations were negligent.") (citations and internal quotation marks omitted). That principle applies with even more force here than it did in Motley because in that case, the court considered a hypothetical investigation that would have occurred prior to the alleged constitutional injury being inflicted and thus that investigation could have prevented the violation from ever occurring. Duarte does not allege here how an after-the-fact investigation by Underwood would have prevented the events leading to his remaining claims. Stated another way, Duarte has not established that a failure to investigate led to his arrest or Hachler's use of force.

condoning or ratification."). Nor has he shown how the existence or settlement of other lawsuits indicates that any of Jones' conduct was implicated in those actions. Finally, there is no evidence before the Court to establish that any policy implemented by Jones was the moving force behind Duarte's arrest or the force used in effectuating it. Accordingly, both Underwood and Jones are entitled to judgment in their favor.

### C. Monell claims

Defendants next seek judgment on Duarte's Monell claims against SPD and the City of Stockton. "A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." Dougherty v. City of Covina, 654 F.3d 892 (9th Cir. 2011) (citing Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 694 (1978)). "In order to establish liability for governmental entities under Monell, a plaintiff must prove '(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation.'" Id. (quoting Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 438 (9th Cir.1997) (internal quotation marks and citation omitted; alterations in original)).

Duarte contends that SPD and the City ratified the actions of Gandy and Hachler because "the investigation of Hachler's actions, to the extent it took place at all, contained inconsistencies that should have been apparent to any reasonable administrator." Pl.'s Opp., ECF No. 141 at 21. In addition, Duarte argues, the City and SPD have a custom or practice that tolerates actions like those taken by Gandy and Hachler. Id. at 21. In support of this second argument, Duarte points to a variety of lawsuits alleging that SPD officers utilized excessive force. Finally, according to Duarte, SPD and the City are liable for the actions of Gandy and Hachler on a failure to train theory.

None of these arguments are well taken. There is no evidence that there is any

9

sort of policy or custom in place under which the City and SPD turn a blind eye to instances where officers were found to have used excessive force. While Duarte points to lawsuits that included allegations regarding unconstitutional uses of force, and he offers evidence that the parties in some of those suits reached settlements, he has not shown that it was established that the force used in those cases was determined to be wrongful. In addition, Duarte has not shown that any of those cases concerned facts sufficiently similar to those before the Court here. Duarte has likewise offered nothing beyond conclusory assertions to support his theories that SPD or the City ratified Gandy and Hachler's actions or provided constitutionally deficient training. Given the lack of evidence before the Court, Defendants have shown that they are entitled to judgment on Duarte's Monell claims against SPD and the City of Stockton.

### D.     False Arrest/Imprisonment

Defendants contend they are entitled to judgment on Duarte's false arrest/imprisonment claim because his "arrest was appropriate under the circumstances." Defs.' Mot., ECF No. 137-1, at 13. The Court agrees.

Duarte was arrested for violation of California Penal Code § 148(a), which provides:

> Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician . . . in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment.

Cal. Pen. Code § 148(a)(1). It is undisputed that Duarte was very close to officers effectuating the arrest of Gutierrez in a dark, tight space in the middle of a large crowd. He ignored two commands to "get back." When Gandy attempted to grab Duarte, he told the officer not to push him. Then, once he and Gandy fell to the ground, Duarte again failed to comply with commands to put his hands behind his back, saying only that he "didn't do anything." The Court is aware that Duarte has offered evidence that he did

10

not hear the initial commands to "get back" and that his hands ended up underneath his body as officers tried to handcuff him.  None of that was conveyed to the officers at the scene, however, and it is reasonable under the circumstances to have concluded Duarte was obstructing their performance of their duties and resisting arrest.[13]  Defendants Motion is GRANTED as to Duarte's false arrest/imprisonment cause of action.

### E. Excessive Force

Finally, Defendants move for judgment as a matter of law as to Duarte's excessive force claims against Gandy and Hachler.  According to Defendants, the relevant uses of force can be broken down into three separate instances:  (1) "Officer Gandy taking Duarte to the ground"; (2) "Officer Hachler using his baton on Duarte"; and (3) "Officer Gandy making Duarte walk on his injured leg."  Defs.' Mot., ECF No. 137-1, at 16.  Each of these, they argue, was reasonable.

Fourth Amendment excessive force claims are evaluated for objective reasonableness, asking "'whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them.'"  Tan Lam v. City of Los Banos, 976 F.3d 986, 996-97 (9th Cir. 2020) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)).  "To assess objective reasonableness, [the Court] balance[s] the nature and quality of the intrusion against the government's interests."  Bernal v. Sacramento County Sheriff's Dept., 73 F. 4th 678, 691 (9th Cir. 2023).  "Graham sets out a non-exhaustive list of factors for evaluating reasonableness: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect actively resisted arrest or attempted to escape."  Maxwell v. County of San Diego, 708 F.3d 1074, 1086 (9th Cir. 2013).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Graham, 490 U.S. at 396.  "The calculus

---

[13] Duarte argues in opposition that when ordered to put his hands behind his back, he said, "I can't." Pl.'s Opp., ECF No. 141, at 17.  That appears to be an embellishment of the record as Duarte offers no evidence to support that statement and instead testifies that he instead said, "I'm not doing nothing, sir." Duarte Decl., ECF No. 58-3, ¶ 4.

of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id. at 396-97.

As to Officer Gandy taking Duarte to the ground, Duarte's only real argument in opposition is that "three seconds [was] insufficient time for Defendant Gandy to allot for [Duarte] to comply, and insufficient time for . . . Gandy to immediately move into force." Pl.'s Opp., ECF No. 141, at 17.  This is not a challenge to the amount of force, but rather to the need to resort to force in the first place.  The Court concludes that this use of force was reasonable.  First, officers had responded late in the evening to multiple calls reporting sideshow activity and shots fired, and they were confronted with trying to manage a large crowd of people and the accompanying traffic.  Second, when Duarte came into close proximity with officers effectuating the arrest of Gutierrez in a dark, narrow space between two parked cars, he and was twice ordered to "get back," but he did not retreat.  Gandy thus moved to physically push Duarte back or grab him and the result was the two of them landing on the ground.  The fact that this happened relatively quickly cuts in Gandy's favor not Duarte's because these are precisely the type of "tense, uncertain, and rapidly evolving" circumstances in which we allow officers to make split-second judgments."[14]

Nor was it unreasonable for Gandy to require Duarte to walk to the patrol vehicle after Duarte complained that his leg was broken.  The Court is aware of no authority requiring officers to adjust their protocols based on the subjective complaints of an arrestee.  Certainly, chaos would result from such a rule.  Moreover, Duarte has offered no objective evidence to indicate that officers should have known the extent of his

---

[14] It is irrelevant that Duarte did not hear the orders to get back.  The Court is considering the scene from the perspective of a reasonable officer.  It is objectively reasonable that an officer on the scene ordering an individual to get back would believe he had been heard.  In any event, three seconds is a long time under the circumstances of this case.  Indeed, Duarte had enough time to protest verbally that he was being pushed, which indicates he had time to react, and officers reasonably believed he had chosen not to obey orders.

injuries. There is certainly no evidence that Gandy was aware Duarte's ankle was broken. Given all of this, having an arrestee walk to a waiting vehicle was reasonable.

As to Officer Hachler's use of the baton, an intermediate use of force, there is a dispute of fact as to how many times he struck Duarte. Officer Hachler claims he struck Duarte once, but Duarte claims he was struck at least six times. Regardless of the exact number of baton strikes, however, it is undisputed that Duarte was not struck again after officers were able to handcuff him. At no point did Duarte advise officers that he could not put his hands behind his back, and it was reasonable for Gandy and Hachler to treat his noncompliance as active resistance by an unsearched individual under dangerous circumstances. Indeed, Duarte does not offer evidence that utilizing a lesser number of baton strikes would have been reasonable when he continued to fail to comply with orders to put his hands behind his back throughout all of them. In fact, Duarte appears to contend the baton should not have been used at all because he was simply unable to comply. That argument is foreclosed, however, by the fact that despite his other utterances, he never tried to convey that fact to officers. Under the totality of the circumstances set forth above, which were objectively dangerous for both officers and bystanders, utilizing intermediate force to gain compliance of an individual who disobeyed multiple commands was objectively reasonable. Defendants' Motion is GRANTED as to Duarte's excessive force claims as well.

## CONCLUSION

For the reasons just stated, Defendants' Motion for Summary Judgment (ECF No. 137) is GRANTED. The Clerk of the Court is directed to enter judgment for Defendants and close this case.

IT IS SO ORDERED.

DATED: February 6, 2024

MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE